IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

**MICHAEL GRANT,**

        **Plaintiff,**

        **v.**

**INDIAN RIVER STATE COLLEGE
FOUNDATION, INC D/B/A INDIAN
RIVER STATE COLLEGE, a Florida
Not For Profit Corporation,**

        **Defendant.**

CASE NO.

_____/

**COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff MICHAEL GRANT (hereinafter "Grant" or "Plaintiff"), by and through his undersigned attorney, hereby files this Complaint against INDIAN RIVER STATE COLLEGE FOUNDATION, INC D/B/A INDIAN RIVER STATE COLLEGE (hereinafter "Indian River" or "Defendant"), and in support thereof states as follows:

**NATURE OF CASE**

This is an action to remedy discrimination pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (collectively "Title VII"); the Age Discrimination in Employment Act ("ADEA"); and the Florida Civil Rights Act ("FCRA").  Plaintiff is seeking damages including back pay, front pay, compensatory damages, liquidated damages, punitive damages (if permitted to be pled), attorneys' fees and costs, and any other relief to which the Plaintiffs are entitled including but not limited to equitable relief.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this complaint pursuant to 28 U.S.C. §1331 and has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2. The Plaintiff's claims arise under the laws of the United States.

3. Additionally, the events giving rise to this action occurred within this District.

4. Therefore, venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

5. Plaintiff was an employee of Defendant from approximately December 2018 to July 2021.

6. Plaintiff was employed by Defendant in Fort Pierce, Florida.

7. Defendant is a Not-for-Profit Corporation which operates a college in Fort Pierce, Florida.

8. Defendant employs more than fifty (50) employees.

9. Defendant employs more than fifty (50) employees within 75 miles of Fort Pierce, Florida.

10. Defendant is an "employer" as defined by the ADEA.

11. Plaintiff was an "employee" as defined by the ADEA.

## STATUTORY PREREQUISITES

12. At all times material, Plaintiff was a 55-year-old African American individual who suffered discrimination based on his race and age.

13. Plaintiff is a member of a class of individuals protected by the ADEA, Title VII and the FCRA.

14. Defendant meets the statutory criteria for coverage as an "employer" under the

ADEA, Title VII, and the FCRA.

15. Plaintiff meets the statutory criteria for coverage as an "employee" under both Title VII and FCRA.

16. Plaintiff is a member of a class of individuals protected by the ADEA.

17. The Defendant meets the statutory criteria for coverage as an "employer" under the ADEA.

18. Plaintiff meets the statutory criteria for coverage as an "employee" under the ADEA.

19. At all times material to the allegations herein, Plaintiff was qualified for his position as Director of Enrollment Management.

20. Plaintiff has satisfied all administrative prerequisites to perfect his claim.

21. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

22. The EEOC issued a notice of right to sue on January 20, 2023.

23. Plaintiff brings this suit within ninety (90) days of receipt of his notice of right to sue.

24. Therefore, the initial Complaint in this action is being filed within 90 days of Plaintiff receiving his right-to-sue letter.

25. Plaintiff has complied with all other requirements and all prerequisites prior to bringing this lawsuit.

## FACTUAL ALLEGATION

26. Plaintiff is an African American male and, therefore, is a member of a protected class as recognized by Title VII of the Civil Rights Act, Section 1981, and the Florida Civil Rights Act.

27. Defendant denied Plaintiff the opportunity for career advancement due to his race.

28. Defendant denied Plaintiff the opportunity for career advancement due to his age.

29. Plaintiff began his employment for the College on December 3, 2018, as the Director of Enrollment Management.

30. As the Director of Enrollment Management, Plaintiff established strategic enrollment plans for the College, which also included its branch campuses: Okeechobee (Dixon Hendry campus), Port St. Lucie (Pruitt campus), Stuart (Chastain campus) and Vero Beach (Mueller campus).

31. In addition, Plaintiff provided leadership in the planning, development, direction, coordination, and implementation of a systematic college-wide Enrollment Management program.

32. Plaintiff also executed initiatives to increase Defendant's prominence and visibility in the community.

33. Plaintiff developed, analyzed, and utilized data to enhance enrollment, recruitment, and retention related strategies and initiatives.

34. Plaintiff led the initiative to increase students' access to essential campus resources for the purposes of maximizing graduation rates and ensuring students' overall success and satisfaction.

35. On September 1, 2020, Timothy Moore became the College's President and immediately began reorganizing top leadership positions.

36. Moore eliminated the VP of Enrollment and Student Services position and created a new position – the Vice President for Student Success.

37. Moore elevated Elizabeth Gaskin, Chastain Campus President, to the position of Vice President for Student Success.

38. Moore gave Gaskin unfettered control to reorganize the department.

39. Accordingly, Gaskin eliminated the Enrollment Management Department.

40. On April 9, 2021, Plaintiff learned his position had been eliminated and he would be placed on administrative leave until Thursday, July 1, 2021.

41. Plaintiff inquired about other available positions within the College.

42. Ultimately, Melissa Prochaska, Vice President of Human Resources, and Gaskin informed Plaintiff that the College could not accommodate Plaintiff's salary and he would not be offered another position with the College.

43. At all times material, Plaintiff earned a annual salary of $75,000.

44. Later that day, Gaskin circulated an e-mail at 6:56pm, which highlighted the College's recent decline in enrollment figures and Plaintiff's departure from his position.

45. Gaskin also announced that a new departmental structure had already been created, and an organizational chart was forthcoming.

46. On April 22, 2021, Defendant posted a job opening for the newly created position – Administrative Director of Admissions and Recruitment.

47. The position boasted an annual salary of $108,000.

48. However, the so-called newly rebranded position incorporated most of the key functions of Plaintiff's former position, the Director of Enrollment, with an emphasis of recruitment, retention, leadership, development, and customer service.

49. Also interesting was the fact that the so-called newly created department would be housed in the same building/office as Plaintiff's previous office.

50. Plaintiff applied for the position on April 22, 2021.

51. Without question, Plaintiff met all of the posted qualifications for the newly created position.

52. The application portal closed on April 29, 2021, at 11:59:59 pm, having only been open for one (1) calendar week.

53. The racial pool of applicants was unbalanced.

54. Out of the twenty-five (25) total applicants only three (3) were black – including Plaintiff.

55. All other applicants were white except for one applicant who did not identify her race.

56. Although Plaintiff, of all the candidates selected by Gaskin, held the position most similar to the newly rebranded Administrative Director position, Gaskin summarily denied Plaintiff the opportunity to be interviewed.

57. On May 25, 2021, Plaintiff learned his application had been summarily rejected.

58. Gaskin chose Emily Mass (White), Sandra Jesse (Black), and Bart Blankenship (White) to be interviewed by the interview panel.

59. There were no checks and balances instituted for Gaskin's initial selection process; she possessed unfettered decision-making authority.

60. Plaintiff was qualified for the position.

61. Plaintiff holds a Master's degree in Educational Specialization College Enrollment Management from Capella University, a Doctorate in Education Leadership from Capella University, and Certification in Enrollment Management from Ruffalo Noel Levitz.

62. Plaintiff has worked in the industry for more than twenty-five (25) years.

63. Plaintiff has a record of success in achieving significant recruitment and enrollment goals.

64. Despite lower student enrollment numbers (nationally and state-wide), largely due to the onset of COVID-19, Gaskin reported to the Treasure Coast Newspapers the Defendant celebrated

its largest fall commence with 715 students participating in December 2020.

65. Plaintiff served as the Director of Enrollment prior to and during the peak of the COVID-19 Pandemic.

66. Defendant does not possess a legitimate, nondiscriminatory, reason for denying Grant an opportunity to interview.

67. Because Plaintiff's former position was a staff-level position, and the Administrative Director of Recruitment and Admissions position is an administrator-level position, Defendant labeled Plaintiff as incapable of handling the position.

68. However, Gaskin elevated Emily Mass, Chastain College's Program Director, to the position to the newly rebranded position.

69. Chastain's Program Director position is also a staff-level position.

70. Mass was less qualified than Plaintiff.

71. Chastain Campus has the least amount of enrolled students than any other of campus – approximately 300-500.

72. As the key member on the Enrollment and Student Leadership Team, Plaintiff supported over 23,000 students and interfaced with key instructional administrators, faculty, and staff throughout the entire college.

73. Mass has less educational training and fourteen (14) years less experience in the industry than Plaintiff.

74. Gaskin knew she wanted Mass, a younger white woman, for the job and purposely discriminated against Plaintiff, an older black man, by intentionally denying him a fair opportunity.

75. Shockingly, Mass was the only internal applicant advanced by Defendant to be considered by the interview panel.

76. Gaskin knew Plaintiff's application would be stronger than Mass's because of his experience with the College and educational background.

77. Gaskin anticipated that if given a fair opportunity, Plaintiff could potentially garner more votes from the interview panel.

78. Thus, Gaskin intended to completely thwart any opportunity for Plaintiff's advancement.

79. Gaskin treated Mass more favorably than Plaintiff due to her race and age.

80. At the time, Emily Mass was forty-five (45) years old.

81. At the time, Gaskin was forty-five (45) years old.

82. At the time, Plaintiff was fifty-five (55) years old.

83. At the time, the former Dean of Enrollment and Student Services was fifty-seven (57) years old.

84. At the time, the former Vice President of Enrollment and Student Services was sixty-four (64) years old.

85. Defendant employed an unlawful combination of racial and ageist barriers to preclude former employees from advancement opportunities.

86. At the time of his termination, Plaintiff was qualified for his position.

87. Plaintiff was treated differently than other Caucasian (non-Black) employees.

88. In addition, Plaintiff was treated differently than younger employees.

89. Defendant's reason for treating Plaintiff differently was pretextual.

90. Plaintiff was treated differently because of his race and age.

91. Defendant discriminated against Plaintiff because of his race and age.

## COUNT I
## RACE DISCRIMINATION UNDER TITLE VII

92. Plaintiff re-alleges and adopts the allegations of paragraphs 1-9; 12-15; 19-27; 29-79; 85-87; 89-91 above as if fully set forth herein.

93. Defendant discriminated against Plaintiff based on his race, African American.

94. Defendant engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff as set forth above.

95. Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

96. Plaintiff suffered adverse employment actions by being denied pay raises and having his employment terminated.

97. Plaintiff was treated differently from similarly situated employees outside of Plaintiff's protected class.

98. Defendant committed the above discrimination with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

    a. Back pay and benefits;

    b. Interest on backpay and benefits;

    c. Front pay and benefits;

    d. Compensatory damages for emotional pain and suffering;

    e. Injunctive relief;

    f.       Prejudgment interest;

    g.      Costs and attorney's fees; and

    h.      Such other relief as this Court may deem just and proper.

## COUNT II
## DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981

99. Plaintiff reincorporates and adopts all allegations contained within paragraphs 1-9; 12-15; 19-27; 29-79; 85-87; 89-91 above.

100. Plaintiff is an African American individual and therefore a member of the protected class as set forth in and pursuant to 42 U.S.C. §1981.

101. At all times material, Plaintiff was an employee of the Defendant.

102. At all times material, Defendant through its agents, representatives and employees, who were acting in the course and scope of their employment, was/is an employer within the meaning of Section 1981.

103. Defendant deprived Plaintiff of his civil rights under 42 U.S.C. § 1981 by discriminating against Plaintiff with respect to the benefits, rights, privileges, terms, and conditions of his employment with the specific purpose of adversely affecting Plaintiff's ability to gain future and/or further employment.

104. Defendant has never on any other occasions acted in such a manner with white former or current employees who have entered into such or similar employment related contract(s), agreements or relationships with the Defendant.

105. Pursuant to 42 U.S.C. §1981(a), "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

106.  Pursuant to 42 U.S.C. §1981 (b), "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

107.  Based on the foregoing allegations the Defendant violated Plaintiff's civil rights under 42 U.S.C. §1981 by discriminating against Plaintiff in the making and enforcement of his employment contract and employment relationship, including the performance, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship between Plaintiff and the Defendant.

108.  WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

109.  a.  Back pay and benefits;

110.  b.  Interest on back pay and benefits;

111.  c.  Front pay and benefits;

112.  d.  Compensatory damages for emotional pain and suffering;

113.  e.  Non-pecuniary damages afforded under Section 1981;

114.  g.  Costs and attorney's fees; and

115.  h.  Such other relief as the Court may deem just and proper.

### COUNT III
### RACE DISCRIMINATION IN VIOLATION OF THE FCRA

116.  Plaintiff re-alleges and adopts the allegations of paragraphs 1-9; 12-15; 19-27; 29-79; 85-87; 89-91 above as if fully set forth herein.

117.  Plaintiff brings this cause of action pursuant to Section 760.07, F.S.

118.  Defendant discriminated against Plaintiff based on his race, African American.

11

119. Defendant engaged in unlawful employment practices prohibited by the FCRA by discriminating against Plaintiff as set forth above.

120. Defendants knew or should have known of the discrimination and unlawful targeting of Plaintiff.

121. At all material times, Plaintiff was qualified to perform his job duties and did so.

122. Plaintiff suffered an adverse employment action by being terminated from his employment and being denied a pay raise.

123. Defendant treated similarly situated employees outside Plaintiff's protected class, more favorably.

124. Defendant knew or should have known of the discrimination and unlawful targeting of Plaintiff.

125. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable reliefallowed by law including:

   a. Back pay and benefits;
   b. Interest on backpay and benefits;
   c. Front pay and benefits;
   d. Compensatory damages for emotional pain and suffering;
   e. Non-pecuniary damages afforded under Section 1981;

g.  Costs and attorney's fees; and

h.  Such other relief as this Court may deem just and proper.

## COUNT IV
## AGE DISCRIMINATION IN VIOLATION OF THE ADEA

126. Plaintiff re-alleges and adopts the allegations of paragraphs 1-26; 28-86; 88-91 above as if fully set forth herein.

127. At all times material, Plaintiff was 55 years of age and a member of a protected class.

128. Plaintiff was qualified for current position because he had performed in that position for a substantial period of time.

129. Plaintiff was subjected to the adverse employment action of being terminated.

130. Plaintiff was treated less favorable than younger, similarly situated employees.

131. Defendant discriminated against Plaintiff because of his age.

132. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against discrimination under the ADEA because it treated Plaintiff less favorably because of his age.

133. The discrimination to which Plaintiff was subjected was based on his age.

134. Defendant does not have a legitimate, non-discriminatory reason for its firing of Plaintiff.

135. The conduct of Defendant and its agents and employees, proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

136. The conduct of Defendant was so willful and wanton, and in such reckless disregard

of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter Defendant, and others, from such conduct in the future.

137. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to the ADEA.

138. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

    a.    Back pay and benefits;

    b.    Interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering;

    e.    Injunctive relief;

    f.    Prejudgment interest;

    g.    Costs and attorney's fees; and

    h.    Such other relief as this Court may deem just and proper.

### COUNT V
### AGE DISCRIMINATION IN VIOLATION OF THE FCRA

139. Plaintiff re-alleges and adopts the allegations of paragraphs 1-26; 28-86; 88-91 above as if fully set forth herein.

140. Plaintiff brings this cause of action pursuant to Section 760.07, F.S.

141. At all times material, Plaintiff was 55 years of age and a member of a protected class.

142. Plaintiff was qualified for his current position because he had performed in that

position for a substantial period of time.

143. Plaintiff was subjected to the adverse employment action of being terminated.

144. Plaintiff was treated less favorably than younger, similarly situated employees.

145. Defendant discriminated against Plaintiff because of his age.

146. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against discrimination under the FCRA because it treated Plaintiff less favorably because of his age.

147. The discrimination to which Plaintiff was subjected was based on his age.

148. Defendant does not have a legitimate, non-discriminatory reason for its firing of Plaintiff.

149. The conduct of Defendant and its agents and employees, proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

150. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of the Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter Defendant, and others, from such conduct in the future.

151. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to the FCRA.

152. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages for emotional pain and suffering;

e. Injunctive relief;

f. Prejudgment interest;

g. Costs and attorney's fees; and

h. Such other relief as the Court may deem just and proper.

<b><u>DEMAND FOR JURY TRIAL</u></b>

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated this 11 day of April, 2023.

*s/Julien W. Maynard*
**Anthony Hall, Esq.**
FL Bar No.: 40924
**Julien W. Maynard, Esq.** – LEAD COUNSEL
FL Bar No.: 1035332
THE LEACH FIRM, P.A.
631 S. Orlando Avenue, Suite 300
Winter Park, Florida 32789
Telephone: (407) 574-4999
Facsimile: (833) 523-5864
Email: ahall@theleachfirm.com
Email: jmaynard@theleachfirm.com
Email: yhernandez@theleachfirm.com
***Attorneys for Plaintiff***
